Thank you, Your Honor. May it please the Court, my name is Elliot Bean. I represent the Coalition of Adjoining Property Owners and a number of the individual owners. Mr. Volkow represents some of the owners as well. He and I, with the clerk, have agreed to an allocation of our 15 minutes, under which I will take a total of 8 minutes, and Mr. Volkow will have a total of 7 minutes. And I do intend, at least, to use approximately 5 minutes of my time on opening. I would like to use my time to discuss an official pre-litigation statement by the government. Let me back up for a second. Please. It sounds to me, from the briefs, as though it's kind of important that there isn't any approval of the casino yet, and what's being challenged is putting the ranch or real land into trust. That's correct. That is the central argument by the defendants, who challenge standing on that basis. Will there be a subsequent opportunity for the surrounding property owners to challenge a casino permit? I think there is some kind of permitting procedure under the Indian Gaming Regulatory Act. Correct. That's the defendants' fundamental argument. Yes, and I want to know why isn't it enough that neighbors can protest the permission under the Indian Gaming Regulatory Act. Yes, certainly. For a number of reasons. Number one, these are environmental reviews under federal law that they are telling this court is perfectly sufficient to address my client's concerns. Well, that begs the fundamental question presented right now at the time of this acquisition, which is our contention, and it's the major dispute, what law will govern the development of this parcel? We claim that despite the transfer in trust, that land use will remain completely controlled by the state of California and local zoning, planning, and anti-gaming laws. So that question will not and cannot be— Let me ask you this, Mr. Bean. Are you challenging the transfer itself? Yes, Your Honor. To the Secretary, are you just merely—I'd say merely, but is it your contention that we're now challenging the transfer to the Secretary of the Interior, but we're claiming that the Secretary of the Interior gets these lands subject to all of these conditions? The answer is both, Your Honor. We challenge the transfer because it violates—on the grounds that it violates the site criteria in the authorizing statute, the Graton Act. That's number one. And number two, we say even if the transfer of title takes place and the United States obtains the land in trust, it simply does not have the enormous effect that the government and the appellees contend, which is the subject of Judge Kleinfeld's question. And that's why the notion that a future review under federal law somehow is an adequate remedy is just a complete evasion of the issue that's presented now. The timing of the acquisition will determine whether federal or state law will even govern. I don't understand something there. Please. As I understand it now, your concern is not just the casino. It's transferring the land out of state regulatory authority. Absolutely. And I can understand that proposition. But it looks as though this Williamson Act concern that you have doesn't really do anything because the acreage transferred I don't think is used for agricultural purposes, if I remember the record correctly, and I may not. And the Williamson Act lands, the Williamson Act lands. In my judgment, and this is what our brief opening on reply concentrated on, it's the state and local planning and zoning law, which is the key issue here. I don't disagree with Mr. Volcker, who concentrates more on Williamson Act. Is what I said about Williamson Act true? Was that accurate? I'm sorry. Forgive me, Your Honor. I had started to think about the zoning. You were thinking about something other than that? The zoning, yeah. I think the mere fact that only the only. Is your colleague willing to talk about the Williamson Act? I will try to address Your Honor's question right now. The mere fact that only one portion of this land is covered by Williamson Act contracts or by the zoning laws for that matter, well, by Williamson Act contracts, does not detract from the fact that the entire parcel and the entire neighborhood around the parcel would be affected by putting this use on the land that is covered by the Williamson Act. I mean, it's just a fiction to say that by putting what there? The casino? I thought the casino is not going on Williamson Act land. By putting the casino on a piece of the land that may not be covered by the Williamson Act does not detract from the impact of doing so on the rest of the land that is covered by Williamson Act and, of course, by state and local zoning law or the effect on the surrounding neighborhood. What is the effect, if any, in your view of the? Hasn't the tribe, like, made some kind of commitment that it will observe the Williamson Act conditions? Your Honor, that's totally outside the record. It's a factual assertion. The record of this case are the allegations of the complaint. And it's the defendants who served this appeal up as based upon an attack on our pleading. And that's the record. Now, they put in a declaration and they put in self-serving policies from now until tomorrow. I don't think that changes the record that governs this appeal. I don't actually understand why, even if there's Williamson Act property that is going to be transferred into trust status, that that is barred by the Grayton Act. The Grayton Act says that the Secretary shall accept into trust real property if there are no adverse legal claims to such property, including outstanding liens, mortgages, or taxes. That keeps the tribe from depriving a bank, for example, of its lien or mortgage or depriving a municipality of taxes due by getting the land into trust status so that it can't be foreclosed on. I think it also avoids the The Williamson Act is not an adverse legal claim on the land of that nature. So I don't see why the Grayton Act would cover it. It's a restriction on development that's similar to some of the recorded interests that we've cited in the briefs. The fact that the tribe claims that they're going to obey the Williamson Act for I didn't ask you about that. I asked you It is a restriction The Williamson Act is a contract between a landowner and the State to use it agriculturally. Is that right? Right. Now, the landowner does not have an adverse claim against the land that he himself has burdened with such a contract that's in the nature of a lien, mortgage, or taxes, I don't think, and neither does the State. Or do they? Well, it has to do with the nature of a lien, mortgage, or taxes. I know where you are. There are ways that somebody who is owed money can take it from the debtor, and you can't take the land from the debtor because he hasn't paid what he owes you if the land has been put into trust. The government itself, Your Honor, took the position that a recorded easement, that a recorded declaration of covenants and conditions restricting the use of some of the parcels included in this property would be adverse claims but for the land transfer, which they claim, we dispute, of course, would extinguish them because no land that's covered by the Williamson Act is used non-agriculturally. The landowner violates his contractual duty to the State and uses it. He sells it for his subdivision. What remedies are there? Can anyone take the land? Is there personal indebtedness of the landowner which turns into a lien against the land if he doesn't pay it? What happens? There are penalties involved. There are hearings that would take place. I must say Mr. Volker is more familiar with those. He has briefed those more so than I have. But there are remedies. Those are restrictions that are in the nature of adverse claims. I think in part the adverse claims requirement is not just to avoid monetary obligations on the part of the tribe who may be operating the casino there, but it's also to prevent complications and expense and liability on the part of the government. The whole idea is to have these parcels clean, free of any adverse claims, not just monetary, any claims that would burden the government and the ultimate use. We have run through your time, so you'll want to wind it down. I will just simply refer to this. Let me just summarize then. The present transfer, as even stated by the Secretary of the Interior in the Federal Register Notice of May of 2008, says that the purpose is to afford interested parties an opportunity to seek judicial review of the acquisition before, I'm quoting, before transfer of title to the property occurs. This was the pre-litigation statement I was referring to at the outset. Somebody up there in the BIA before briefs were being filed in this case felt that, in fact, the acquisition is consequential enough to support standing on the part of interested parties And I think the City of Cheryl case, for example, that we talk about in our briefs, is a methodical thing. Do you have some language in the Grayton Act that you're relying on for that? I'm talking about standing law, Your Honor. I guess I wasn't having as much problem with your standing as the substantive right. I see, on the adverse claims issue. I can address that more, but I'm three minutes over at this point. Yeah, we are. Thank you. All right. Thank you very much. Good morning, Your Honors. Stephen Volker for Plaintiffs and Appellants. I couldn't hear you. Good morning, Your Honors. Stephen Volker for Plaintiffs and Appellants. Fred Soares and Frank Egger. If it pleases the Court, I'd be pleased to respond to the questions posed with regard to the Grayton Act and the Williamson Act, if I might address those directly. Thank you. The Grayton Act has two provisions that make clear that this transfer of land into trust was contrary to the specific requirements of the Grayton Act. First, under Section 25 U.S.C. 1300 N3A, the statute directs that no transfer may be made if there is an adverse legal claim to the property, including liens, mortgages, or taxes. Secondly, Section 1300 N2E provides that nothing in the Act shall alter any property right or obligation, any contractual right or obligation, or any obligation for taxes levied. This transfer violates all three. Specifically with regard to the Williamson Act, Your Honor, the Court has indicated that it is a contract between the County of Sonoma and the landowners in this case. Under the Williamson Act, Government Code Sections 51-251 and 51-285 and the following, any property owner within Sonoma County may sue to set aside an unlawful cancellation of the contract and any landowner owning land within one mile of the land in question may sue to enforce the contractual restrictions. The case law under the Williamson Act makes clear that it is intended to preserve open space for the use and enjoyment both of residents in the immediate vicinity and for urban dwellers for the lofty environmental purposes of the statute. But so what do you want this Court to decide with respect to the Williamson Act? That it's like a, you know, like a cloud on title or what? It is an encumbrance in three ways, Your Honor. It's an encumbrance as a matter of You want us to issue a declaration that it's an encumbrance on the title? And so what, that the Secretary of Interior has to observe the Williamson Act? Is that what you want? That the Secretary of Interior violated the Grattan Act's restriction against the transfer of land into trust, whereas here it is encumbered, one, by a contract enforceable by plaintiffs in this case and thus Let me ask you, just an ordinary, I'll just call it ordinary California title practice. Yes. If a land has a Williamson Act contract on it, does that show up in the title report as some kind of a cloud on title or encumbrance, do you know? I believe it does, and the reason is that the county or the city, as a holder of the contract over restricting use of the land, must under the Williamson Act as well as under the California Constitution, receive penalties paid by the landowner should it attempt to deviate from the enforceable restrictions requiring open space use of land. The penalty amounts to what? I mean, you have to sort of pay up, you get some kind of lower taxes, right? That's correct. The Williamson Act is a ten-year revolving contractual commitment that restricts the assessed value of the land and thus the property taxes paid, but if the landowner violates the enforceable restrictions, the landowner is obliged then to pay a penalty to the county or the city, which is basically back taxes plus some additional payments. That also benefits the citizens of the county in a pecuniary or tax way, in that the recovery of those taxes is a means of redressing the taxes foregone and thus the additional burdens borne by those citizens in the county. All right. Now, my understanding is that the solicitor of the Department of the Interior came out with an opinion that, in effect, it says the Williamson Act contract is not an encumbrance, right? Is that more or less what the solicitor said? Yes and no, Your Honor. The Interior Department speaks the baby. It took the position that this was not an encumbrance because the developer would not violate encumbrances that were narrowly framed under the position of the government and that narrow construction of the Act doesn't comport with the actual language in 1300 N-2, which makes clear that nothing in the Act shall alter any property right or obligation, any contractual right or obligation, or any obligation for taxes. Here we have an obligation for taxes. We have a contractual obligation to the county enforceable by its citizens, and we have a property obligation, if you will, because the contractual restriction runs with the land. It is enforceable at the behest of our plaintiffs against the landowner to assure that either back taxes are paid or, more specifically, for specific enforcement to restrict the use of the land. Suppose your next-door neighbor has a Williamson Act contract and he breaks it. Can you launch a private civil suit against your neighbor? Absolutely, Your Honor. Yes, and there are cases such as Sierra Club v. City of Hayward, Honey Springs Homeowners Association, the County of San Diego, and Lewis v. City of Hayward, in which the courts all published decisions in California specifically held that citizens residing within the county or citizens owning property within one mile of the land in question had standing to bring suit and could enjoin, and in all three cases did enjoin, the purported cancellations of those contracts by the cities of Hayward and the county of San Diego. Now, Judge Olson didn't decide this question, did she? This question meaning whether or not the Williamson Act is an encumbrance. Well, actually, Your Honor, I believe that she purported to do that. She did address the Williamson Act. She held that it didn't appear to her that the Williamson Act's protections were enforceable at the behest of the citizens residing in the county. That's an incorrect statement of the law. As I indicated, 51-251 and 51-285 and the following of the government code specifically allow any citizen of the county owning land within the county to enforce the contract against cancellations, and any landowner within one mile of the property in question may sue to enforce the contract restriction. And the cases I've identified all involved exactly that scenario where affected citizens brought suit. The suits were upheld by the California Courts of Appeal and the Supreme Court on the grounds that the contracts had been violated and the citizens, therefore, were injured and had the right to enforce the contracts. I see I'm out of time. Go ahead and finish what you're saying. All right. So, again, we have actually three examples of a direct violation of the restrictions placed on this land by the Grattan Act itself, which provides that the land may not be transferred into trust if there is an adverse legal claim. And here we have the three kinds that are identified specifically in the Grattan Act, Section 1300-2E, which is a property restriction, a contract restriction, and a tax restriction. So we couldn't have a more definitive and comprehensive example of a violation of the Grattan Act's specific restrictions of land into trust, and in this case, plaintiffs had to bring suit within 30 days because the Secretary of Interior told them you have 30 days to bring suit. So had we waited for subsequent NEPA determinations by the Indian Gaming Commission or under AGRA, it would have been too late to enforce the Grattan Act's restrictions. According to the district court now, reading this part of her opinion, she doesn't interpret the Williamson Act as giving individual citizens or property owners the right to sue in court. All they can do is make a protest of the cancellation, right, at the cancellation hearing. Is that right? And she says under 51285, only the city or county can sue to enforce the contract. Yes, she said that, and with all respect, the district court erred in that regard. If you follow that with Examination 51286, the next section, you find that it talks about judicial review, and all three courts that I've enumerated, the California Supreme Court and Sierra Club Behavior, which, curiously, this court, the district court, had cited, and the Honey Springs Homeowner Association v. County of San Diego and the Lewis Behavior Court all upheld the standing of citizens residing in the area on the grounds that they fell within the 51285-286 requirement. In addition, as I pointed out – Those cases hold that a citizen has standing under 51285 to bring a suit. Yes, and coupled with 286 as well as 51251, which is somewhat broader in its scope but limited to citizens who own land within one mile of the contracted land. So we have a clear – I'm sorry, Your Honor. All right. If Judge Yashima has more questions, we'll proceed, but you run through your time.  Thank you very much, counsel. May it please the Court. Aaron Avila on behalf of the Federal Defendant's Appellees. I'll be using 10 minutes, and Nicholas Yost, representing the Tribal, will be using the remaining 5 minutes. First, I'd like to start with plaintiffs' lack of constitutional standing in this case because all of their alleged harms in the complaint are from a casino. There's been a lot of talk about Williamson Act contracts and things like that, but the fact of the matter is, in their complaint, none of the plaintiffs in this case allege any harm based on that. So I think that's the threshold problem here is a lack of Article III standing and injury in fact. The complaint can be amended, though. It sounds as though what they're saying is even if there never was a casino, they'd be harmed by the federal acquisition because of its interference with their interest involving their own land under the Williamson Act and keeping the surrounding land rural. Well, a couple of things you're right. First, this is the first amended complaint, and they had an opportunity to amend their complaint already, and they did that once. Second, under Rule 15, I think although leave is to be freely given, justice has to require it. And at this point in the day, it's a little late to allow an amendment. But even putting that aside, I think the rule even allows complaints to be amended to conform to the evidence at trial. Yeah, that is true. And they had an opportunity. They could have submitted declarations in response to the motions to dismiss, and they didn't. They rested on their complaint. I mean, the Williamson Act may be an afterthought, and the whole notion that their land is impaired if the neighboring land is transferred to the government in trust for the tribe and that impairs their Williamson Act, it may all be an afterthought. It may even be a pretext. But if they have a colorable legal interest, I don't think that matters. Well, a couple of things. I think even if you accept that there's an injury in fact, you still need to look at the zone of interest question. And I don't think the Williamson Act contracts are within the zone of interest of what the statute, the Graton Restoration Act, was about. It was about providing a land base. I've always had a problem with that when it's applied aggressively in the area of standing because it supposes that a statute has one purpose, and you only have standing if you're trying to further that purpose and not protect yourself from application of the statute that furthers that purpose. Well, I think there's a couple of things. The Act itself is not concerned about, regardless of whether for whose benefit, it's not concerned about the use of the property once it's acquired in trust. It's a mandatory trust acquisition, and it's not concerned about land use post-trust acquisition. Will there be any barrier to their objecting to a grant of permission for a casino? They won't. They will. Well, it depends on what the results of future actions are. I assume that the tribe already has all its ducks in a row, the financing and the parties involved and everything, and the next thing that happens is an application under IGRA for a casino permit. I cannot represent that they would satisfy the zone of interest for that either, Your Honor, but I think more fundamentally that these particular plaintiffs here. So the neighbors might not be allowed to oppose the grant of the permit? They may be able to bring a NEPA challenge based on the compliance with the National Environmental Policy Act, which is what this complaint reads an awful lot about, but they may not be within the zone of interest of IGRA either, so I think that that also would pose a problem to a future lawsuit potentially. But I think more fundamentally, you know, they're challenging the trust acquisition here. Would NEPA apply? Would they be able to demand NEPA compliance? Well, right now, in connection with the management contract, there is a NEPA process going on, and if they think that's inadequate, they can try to bring a lawsuit alleging that whenever there's a final agency action. I also think, you know, on the merits of the – well, a couple of things about the Williamson Act very quickly. A party – the right that one has under the California statute of a citizen of the county is to protest a cancellation of the act. As pled in the complaint, they admit that there's no present intention for cancellation of the contracts. And with respect to the person within one mile, that does appear on the face of the statute to be a little broader, but that wasn't raised below as far as I could tell, but notwithstanding our earlier colloquy. I guess – and I'd also add that on the merits, the secretary reasonably concluded that the Williamson Act contracts were not adverse legal claims within the meaning of the statute. This would be – this is – this action was brought pursuant to the Administrative Procedure Act, so the question is whether that was an arbitrary and capricious determination. And I respectfully submit that given the record here, it was not. I mean, plaintiffs – under plaintiffs' theory, it seems like – On that issue, does Chevron come into play? That, as well as the Indian Canada of Construction, yes. I mean, it's a statute that the secretary was charged with administering and has administered it, so it is entitled to Chevron deference. Why isn't it an adverse claim similar to taxes by the neighbor? The land is burdened by a Williamson Act contract, which would become unenforceable for the collection of taxes if the property owner violates his previous Williamson Act obligations, turns it into a casino. The question, of course, was at the time of the trust acquisition, were there any adverse legal claims. Under that theory, the secretary would have had to look at all kinds of potential things that might happen in the future and somehow conjure that up as a potential adverse legal claim. Is it correct that what the Williamson Act gives the property owner is a conditional lower tax rate? That's my understanding, that it does lower the tax rate, at least for a given period. There's a problem with the plaintiffs trying to enforce the Williamson Act here, though. I just assume that once the secretary gets title to these lands in trust, doesn't it just do away with the Williamson Act because he's not bound by state law? At the very least, I was just going to point out section 1300 N-3D says, any real property taken into trust for the benefit of the tribe pursuant to this section shall be exempt from all local, state, and federal tax. Yeah. So it seems like this is all a lot about nothing. And at the end of the day, the conditions on the secretary's acquisition of land have to do with, you know, paying off existing encumbrances so that, you know, say after the transfer, secretary can't claim sovereignty. He says, no, I don't owe back taxes. Right. But with respect to going forward. And that's what we're talking about here. Going forward. The Williamson Act, I wouldn't think, binds the secretary in the administrative trust lands anyway. Well, especially with respect to the tax provision, given that particular provision of the Grayton Act. And the tribe has committed to complying with the Williamson Act provisions. I was told that's outside the record. Well, it was at least mentioned in the regional director's decision, which was included with the motion to dismiss. So. Well, the state law wouldn't bind the federal government at all, would it? I mean, if the federal government wanted to put a garbage dump in a strip joint on the land, there wouldn't be anything that the municipality could say about it. As a general matter, that's correct, Your Honor. I think in Nevada versus Hicks, the Supreme Court did recognize that there are aspects of state jurisdiction that can take into have effect on a reservation. So I don't want to categorically. And the Grayton Act says that any land taken into trust pursuant to this section will be part of the tribe's reservation. So unless the Court has any other questions. Thank you very much, Your Honor. Thank you, counsel. May it please the Court. Nicholas Yost for the Federated Indians of the Grayton Rancheria. Several points to pick up on questions that you were raising. First, just to reemphasize, Judge Kleinfels, your opening sort of statement, you're quite right. The plaintiffs are asking for two bites at the apple here. There's the current proceeding under the Grayton Rancheria Restoration Act for the Secretary of the Interior to take land into trust, period. Explicitly providing we are not authorizing gaming. Two, there is the National Indian Gaming Commission proceeding about which you talked. There is a final environmental impact statement under NEPA, which is out and which is reflected in the record. When you say out, you mean out for comment? No, it is final. It's gone through the comment process. We're just waiting for a record of decision and final agency action by NIGC. Then, Judge Kleinfels, returning, well, actually questions that both of you have raised as to whether or not the plaintiffs in this case would have relief there. The answer, I think, is clearly yes. There's no question, but they have adequately pled standing for NEPA purposes, neighbors, et cetera, et cetera, et cetera. And the second question is whether they have standing for IGRA purposes. And that's a more complicated issue, but the two of the D.C. Circuit cases, which we have cited, the Sea-Tac case and the Tomac case, as well as the district court decision and the Roseville case in the District of D.C., would all give them good arguments. So they have relief, and that will come. Secondly, the arguments being made on appeal depart from what is said in the complaint. I urge you to focus on the complaint. In the appeal, they've talked about the mere fact of change in ownership impairs property values. That's not what they say in the complaint. You look at paragraphs 22, 26, 27 particularly. There are 17 paragraphs that deal with standing. Sixteen of them specifically are related to the casino. The 17th relates to the casino's effects. Typical is paragraph 22. Ms. Long may also suffer economic injury because the casino may lower the value of her property. Next, the plaintiffs seem to be ignoring the Grayton Rancheria Restoration Act. The coalition in their brief, in their reply brief at page 19, described how they wanted to go on and analyze the background of the tribe, whether this is really a tribe, are these their lands, and so on. But most respectfully, this is something which has been addressed, and it's been addressed by Congress, and it's been settled by Congress. Congress has said what this tribe is. It has described precisely the determination of membership of the tribe. There's been a lot of discussion of the Williamson Act. First, as the court noted, the lands where the land, where the casino, if it's going to be built, would be built, is not affected by the Williamson Act. It's not under a Williamson Act contract? That's correct. Secondly, the tribe has committed to keep the Williamson Act contract in effect. That's not an enforceable promise, though, is it? Well, I would say that it is, but I'll elaborate on that. Mr. Bean said there was nothing to that effect in the administrative record. In fact, in his excerpts of the record at page 23 and in the Egger excerpt of record at document 3, page 8, the Interior Department specifically relies on the letter from the tribe's council saying that the tribe is committed to following the. . . What's the matter, though? It's like no new taxes. What are you going to do about it if they change their mind? You can't sue the tribe. In the resolution which the Egger appellants have placed into the excerpts of record, there is a specific waiver of sovereign immunity and another. . . They've waived sovereign immunity for that purpose? They've waived sovereign immunity. And another reason why this is premature. NIGC is obviously considering the Williamson Act, which is considered in the environmental impact statement, which is referred to in citations given to it by both Appellant Egger and by the U.S. Justice Department. Where did they waive sovereign immunity for the. . . In the resolution which appears in the Appellant Egger's excerpts of record is document 11. But at this stage, we don't even know whether NIGC has a condition of its permit, should it give the permit. We don't know whether they're going to make the Williamson Act federally compelled as a mitigation measure. It's certainly something which from the context of what's in the EIS is possible. Is there a recommendation in the EIS on that? The EIS says that the Williamson Act will. . . issues. . . And I'm remembering and trying to paraphrase as best I can. Williamson Act issues will not be an issue because the tribe is committed to following the Williamson Act. Thank you, Counsel. You have used up your time, unless. . . Nothing more. Thank you, Your Honor. Thank you. I don't recall if there was any reserved time, was there? Thank you. Okay. Stop the Casino v. Salazar is submitted. Had you reserved time? Yes. We've gone over. . . Well, the clerk thought you'd gone over, but I'll tell you what, take 30 seconds. Okay. Thank you, Your Honor. Thirty seconds if you're happy. Okay. Specifically, the First Amendment complaint does allege that the taking of land into trust will itself harm the plaintiffs. I would refer to the Court to excerpts of Record Volume 2, Page 2, Paragraph 4, if the property were taken into trust and figure were thereby exempted from state laws, and then it describes the harm directly from that. The similar allegations appear in that document, the First Amendment complaint, at Page 9, Paragraph 30 and 31, and again on Page 23, Paragraph 97. Furthermore, with regard to the assertion that there was an effective waiver, that so-called waiver appears in excerpts of Record Document 11 at Page 3 of 4, and if you scroll down to an unnumbered paragraph near the bottom of that page, it makes clear there's no waiver as to individuals. That is, there's no waiver as to any of the plaintiffs before the Court. So we are directly harmed by that. Secondly, of course, as Justice Feldman- I don't know what that means. What does that mean? There's a waiver as to what? It's purporting to waive sovereign immunity as to the county, but only the county. The county is not before the Court. The citizens here are, and they are basically the courthouse door has been slammed in their face by the resolution. Furthermore, the resolution can be undone without hesitation, as Justice Feldman has indicated. Furthermore, two other points quickly. The resolution was adopted in February 2009. That's after the decision of the Secretary in April and May of 2008. So as a matter of pleading law, it is not within the administrative record leading up to the final agency action. So under the APA, it would be excluded from the Court's consideration. Furthermore, it is post the filing of the complaint in June 2008 and the amendment of the complaint in January 2009. So as a matter of pleading law, the adequacy of the complaint, of course, is always determined as of the moment of the filing. So as of the moment of the filing, that resolution was not before the Court. Thank you very much. Thank you, counsel. Thank you. Stop the Casino v. Salazar is submitted. And we are- May I have 15 seconds for- I think we've gone far enough. Thank you. That's fine. No, I don't have any questions. That's fine. Thank you, counsel.
judges: Kleinfeld, Tashima, Thomas